UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 21 CR 371-2 |
| v. | Judge Matthew F. Kennelly |
| VALERIE GAYTAN | |

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant VALERIE GAYTAN, and her attorney, MICHAEL CLANCY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(a)(2), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h) (Count One), money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Count Three), and engaging in a monetary transaction in criminally derived property greater than $10,000, in violation of Title 18, United States Code, Section 1957 (Count Four).

3. Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6. Defendant will plead guilty because she is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning no later than in or about December 2008, and continuing until at least on or about March 11, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant VALERIE GAYTAN did conspire with Vivianna Lopez, Armando Flores, and others, to commit an offense in violation of Title 18, United States Code, Sections 1956 and 1957, that is, (1) to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is the felonious

buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and (2) to knowingly engage in a monetary transaction in and affecting interstate commerce in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1957, all in violation of Title 18, United States Code, Section 1956(h).

More specifically, in or about 2008, GAYTAN was living in Mexico with other family members, including her husband (Margarito Flores, or "Margarito"), her brother-in-law (Pedro Flores, or "Pedro"), Pedro's wife (Vivianna Lopez, or "Vivianna"), and her other brother-in-law (Armando Flores, or "Armando"). Between at least May 2005 and December 2008, Margarito and Pedro operated a Chicago-based distribution cell for the Sinaloa Cartel and the Beltran Leyva Organization, which involved the transportation and distribution of hundreds of kilograms of cocaine and kilogram quantities of heroin per month to customers in Chicago, Columbus, Cincinnati, Philadelphia, New York, Washington, D.C., Detroit, Los

Angeles, and Vancouver. This drug trafficking activity generated hundreds of millions of dollars of proceeds from the sale of narcotics. In or about November 2008, Margarito, Pedro, and Armando began cooperating with the United States government, which ultimately caused them and their families to leave Mexico and return to the United States in or about December 2008.

In or about August 2010, GAYTAN and Vivianna turned in approximately $4.2 million in cash drug proceeds to counsel for Margarito, for the purpose of forfeiting the proceeds to the government. At the time GAYTAN and others turned in these funds, GAYTAN and others represented that the $4.2 million to constitute all of the available drug proceeds remaining from the drug operations of Margarito and Pedro. However, in reality, additional drug proceeds remained available to GAYTAN.

In or about 2010 or 2011, GAYTAN arrived at Armando's home in the Austin, Texas, area around the same time that a U-Haul truck filled with secondhand furniture arrived. GAYTAN was aware that the truck contained bulk cash, which GAYTAN understood to be drug proceeds, hidden inside the furniture. GAYTAN asked Armando if he could store the cash for her. Armando agreed and proceeded to bury the money underneath his back porch. GAYTAN acknowledges that the cash drug proceeds totaled at least approximately $2.3 million.

Armando stored the cash drug proceeds for GAYTAN for a number of years without accessing it. Beginning in or about 2015, Armando agreed to start disbursing the cash as directed by GAYTAN in exchange for a fee. At GAYTAN's request,

4

Armando disbursed the money in different ways, all of which GAYTAN knew were designed to conceal the illegal nature and source of the money. For example, between approximately one and four times per month (from approximately 2015 to 2020), Armando sent quantities of the cash drug proceeds via U.S. Mail Priority Express to GAYTAN at her home or at a UPS store mailbox held under the name of GAYTAN's family member. The amount of drug proceeds Armando sent in these parcels varied, but on average the parcels contained at least $9,000 per mailing. GAYTAN acknowledges that in approximately 2016 or 2017, Armando started to sometimes exchange older, dirty currency that was often in small denominations, for newer $100 dollar bills at a nearby gas station/currency exchange where Armando knew an employee, before then sending the money to GAYTAN by mail.

Armando also distributed the cash drug proceeds for GAYTAN by delivering the proceeds to a travel agency near Armando's home in order to pay for travel that GAYTAN booked for herself and others. GAYTAN told Armando the approximate amount of cash to bring to the travel agency and then, when Armando was inside the agency, he we would call GAYTAN via a prepaid cell phone, which Armando used to communicate with GAYTAN regarding the drug proceeds, and let GAYTAN speak with the travel agency employee for purposes of booking the travel and also determining the final amount of money that was due. GAYTAN would then have Armando pay the employee that final amount using the cash drug proceeds.

In addition, Armando used the cash drug proceeds to buy and mail out money orders and gift cards at GAYTAN's direction. Armando at times also used his own credit or debit cards to pay for GAYTAN's expenses and then reimbursed himself, plus a fee, with the cash drug proceeds he stored for GAYTAN. This arrangement between Armando and GAYTAN continued until on or about March 9, 2020.

Finally, GAYTAN acknowledges that on or about June 11, 2019, GAYTAN and Vivianna knowingly caused approximately $10,307.43 in drug proceeds possessed by Vivianna to be used to purchase airfare for GAYTAN, Vivianna, and their relatives, at a travel agency in Chicago.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $500,000, or twice the property involved, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

    a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 24, pursuant to Guideline §§ 2S1.1(a)(2) and 2B1.1(b)(1)(I), because the value of the laundered funds is greater than $1,500,000 but less than $3,500,000.

ii. Six levels are added, pursuant to Guideline § 2S1.1(b)(1), because the defendant knew that the laundered funds were the proceeds of an offense involving the manufacture, importation, or distribution of a controlled substance.

iii. Two levels are added to the offense level, pursuant to Guideline § 2S1.1(b)(2)(B), because the defendant was convicted under 18 U.S.C. § 1956.

iv. It is the government's position that four levels are added to the offense level, pursuant to Guideline § 3B1.1(a), because defendant was an organizer of a criminal activity that involved five or more participants or was otherwise extensive. It is defendant's position that this enhancement does not apply. Both parties reserve the right to present evidence and argument on this issue at sentencing.

v. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and

the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 0 and defendant's criminal history category is I:

i. On or about October 1, 2001, defendant was convicted of structuring in the United States District Court for the Northern District of Illinois and sentenced to five months' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives 0 criminal history points for this conviction.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 33, which, when combined with the

anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 135 to 168 months' imprisonment, in addition to any supervised release and fine the Court may impose. It is defendant's position that the anticipated offense level is 29, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 87 to 108 months' imprisonment, in addition to any supervised release and fine the Court may impose.

   e. Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

  10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the

sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to defendant.

## Forfeiture

15. Defendant understands that by pleading guilty, she will subject to forfeiture to the United States all right, title, and interest that she has in any property involved in the offense.

16. Defendant agrees to the entry of a personal money judgment in the amount of $504,858, which represents property involved in the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment she will be ordered to pay.

17. Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

18. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

19. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture

constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 21 CR 371-2.

21. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Conditional Plea of Guilty

22. The government agrees that defendant's plea of guilty is entered pursuant to Fed. R. Crim. P. 11(a)(2). Pursuant to that Rule, the parties agree that defendant, with the consent of the Court, may enter a conditional plea of guilty, reserving her right to appeal the Court's Order of November 8, 2022, denying defendant's motion to dismiss. Only in the event of a reversal of that decision will

defendant be permitted to withdraw her plea. The government does not consent to an appeal on any other pretrial issue, and defendant reserves the right to appeal only the identified pretrial ruling and any issues relating to sentencing. Defendant acknowledges that in the event of a reversal of the Court's order denying the motion to dismiss, the government may reinstate and prosecute any charges against defendant, including but not limited to the charge to which she is pleading guilty under this Agreement. Defendant understands that the Court decides whether or not to approve the entry of this conditional plea under Fed. R. Crim. P. 11(a)(2). If the Court refuses to accept the conditional term of this Agreement, this Agreement shall be null and void.

### Waiver of Rights

23. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b. **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty, the Court's order of November 8, 2022 referenced above, and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

24. Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

25. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at

16

sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

26. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

27. For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced.

Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

28. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

29. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

30. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31. Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this

Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34. Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 4/14/23

_____
Brian Hayes on behalf of
MORRIS PASQUAL
Acting United States Attorney

_____
ANDREW C. ERSKINE
Assistant U.S. Attorney

_____
VALERIE GAYTAN
Defendant

_____
MICHAEL CLANCY
Attorney for Defendant