UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VALERIE GAYTAN | No. 21 CR 371-2<br><br>Judge Matthew F. Kennelly |

**GOVERNMENT'S CORRECTED SENTENCING MEMORANDUM**

For the reasons that follow, the government believes a sentence of 60 months' imprisonment, which is below the applicable guidelines range, would be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

**I.    PRELIMINARY ADVISORY SENTENCING GUIDELINES CALCULATION**

**A.    Calculation**

The government agrees with the Criminal History and Sentencing Guidelines calculations set forth in the Presentence Investigation Report. Defendant is a Criminal History Category I, and her total offense level is 33, which combine for an advisory range of 135 to 168 months' imprisonment. This calculation is based on a total amount laundered of at least $2.3 million—a number defendant acknowledged in her plea agreement. Doc. 225 at p.4

**C.    Leadership**

Defendant object to the 4-level leadership enhancement, but this argument is without merit. Defendant acknowledges she directed her brother-in-law, Armando, to secret, store, and spend the drug proceeds at issue, so the only other question is

whether the offense involved five or more people and it clearly did. At a minimum, the offense involved the defendant, Vivianna Lopez, Laura Lopez, Bianca Finnegan, and Armando Flores. Under Application Note 2 of Guideline §3B1.1, the defendant need only have led at least one of them.

## II. DEFENDANT SHOULD RECEIVE A SENTENCE OF 60 MONTHS' IMPRISONMENT, WHICH IS BELOW THE GUIDELINES RANGE

A sentence of 60 months' imprisonment is sufficient, but not greater than necessary, to comply with the principles set forth in 18 U.S.C. § 3553(a), including to avoid unwarranted disparities with co-defendant's sentences and in light of defendant's ongoing medical issues.

### A. Nature and Circumstances of the Offense

In summary, defendant stored away cash drug proceeds generated by her husband and his brother. Defendant spent those proceeds between 2008 and 2020 in ways she knew were designed to conceal the fact that it was leftover drug money. Defendant did so even after she and her co-defendant, Vivianna Lopez, turned in approximately $4 million in drug proceeds that was represented to the government as being the remaining cash from the husbands' drug operation. This was false, however, and likely intended to divert the government's attention.

During this offense, some of the drug proceeds that remained available to defendant were stored in Austin, Texas, at the residence of Armando Flores, the defendant's brother-in-law. The defendant drove the drug proceeds to Austin in a U-Haul truck, which was filled with drug proceeds hidden inside secondhand furniture.

2

At Gaytan's direction, Armando Flores stored the cash for the defendant by burying it underneath his back porch. Beginning in about 2015, Armando Flores began to disburse the cash, as directed by the defendant, for a fee in ways designed to conceal the illegal nature and source of the money. For example, Armando sent an average of approximately $9,000 in cash through the U.S. Mail to the defendant between 1-4 times a month over the course of five years. Defendant also directed Armando to deliver drug proceeds to a travel agency to pay for travel for defendant and others, and to use drug proceeds to buy and mail out money orders and gift cards. Further Armando used his own credit or debit cards at times to pay for defendant's expenses, and then reimbursed himself with the cash drug proceeds.

### B. History and Characteristics of Defendant

In aggravation, defendant grew up in a stable home; she had a close-knit family and parents that provided for her and were "great and loving." PSR ¶¶ 47-49. She graduated from high school and took some college-level courses at the University of Illinois in Chicago. PSR ¶¶ 82-83. In 1995, she obtained a cosmetology license, which expired in 1997. Defendant had, in sum, opportunities and support growing up that are often not afforded to many defendants sentenced before this court, and yet she squandered those opportunities. She instead chose to live off her husband's ill-gotten gains, all while misleading the government as to the whereabouts of that drug money. Indeed, defendant has still not provided the government – probation – with any

3

financial records, nor has she consented to the probation office obtaining a copy of her personal credit history report. PSR at ¶ 98.

Defendant also has a prior (2001) federal structuring conviction, which appears to have been tied to the drug dealing of her first husband. PSR at ¶¶ 38, 52. And in the instant case, the defendant testified in a manner at the hearing on the defendants' motions to dismiss that the Court found to be not credible.

In mitigation, defendant's childhood was marred by very negative events, which undoubtedly impacted the defendant and her relationships going forward. PSR ¶ 50. In addition, the defendant suffers from several serious physical and mental health problems, and potentially from substance abuse issues, as detailed in the PSR at ¶¶ 63-81.

  **C.** **Need for the Sentence Imposed to Avoid Disparities, Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence**

This is a serious offense and defendant's sentence should reflect that. The defendant and her co-conspirators hid money from the government for well over decade, and then spent those ill-gotten funds to maintain a certain lifestyle. The proceeds at the heart of this offense were generated through the sale of thousands of kilograms of drugs in the United States – drugs that harmed individuals and communities in countless ways. And defendant's secreting of those drug proceeds, and her spending of them, was done after her having made many, many conscious decisions to engage in illegal conduct. In other words, her criminal activity was not

4

the product of a split-second decision, but rather the product of a developed and very conscious plan to engage in criminal activity repeatedly.

There is also a need here, given the nature of this case and its evolution, to promote respect for the law. Even as recently as the hearings on the motions to dismiss, the defendant has tried to spin an alternative narrative about her criminal activity in this case. While she has accepted responsibility through her guilty plea, it is important for the sentence to send a message that reflects that the law should be respected, and that adherence to the law is valued and important.

Finally, while the above factors are very relevant in determining what sentence to impose, the court must also consider the need to avoid unwarranted sentencing disparities. Defendant's most closely aligned co-defendant, Vivianna Lopez, whose Guidelines Range was 108-135 months' imprisonment, was sentenced to 42 months' imprisonment by this Court in July 2023. Doc. 269. Given their similar roles in the offense, and balancing the mitigation and aggravation discussed above (including defendant's prior structuring conviction and her incredible testimony at the hearing), along with balancing the need to avoid unwarranted sentencing disparities, the government recommends a sentence of 60 months' imprisonment.

## III.   GOVERNMENT'S PROPOSED TERMS OF SUPERVISED RELEASE

Consistent with the Seventh Circuit's guidance in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), the government recommends the imposition of a term of supervised release of two years. To promote the sentencing objectives of deterring

5

recidivism, protecting the public, and assisting in the defendant's rehabilitation and reintegration into society, the government recommends that the two-year term of supervised release include the conditions set forth below, which largely echo those proposed by Probation:

### A. Mandatory Conditions

The following mandatory conditions would serve to afford adequate deterrence to criminal conduct, protect the public, and assist in defendant's rehabilitation:

- Not commit another federal, state or local offense;

- Not unlawfully possess a controlled substance;

- Submit to the collection of a DNA sample from the defendant at the direction of the U.S. Probation Office if the collection of such a sample is authorized pursuant to 42 U.S.C. § 14135a(a).

### B. Discretionary Conditions of Supervision

The following conditions would serve to facilitate supervision by the probation officer, thus assisting in encouraging the defendant's compliance with the law and deterring the defendant from future crimes:

- Remain within the jurisdiction where the defendant is being supervised, unless granted permission to leave by the court or a probation officer (Discretionary Condition #14);

- Report to the probation officer as directed by the probation officer (Discretionary Condition #15);

- Permit the probation officer to visit the defendant at home, work, at a community service location, or other reasonable location specified by a probation officer, at any reasonable time, and to confiscate any contraband in plain view of the officer (Discretionary Condition #16);

6

- Notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer (Discretionary Condition #17);

- Notify a probation officer within 72 hours of being arrested or questioned by a law enforcement officer (Discretionary Condition #18);

- Not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the Court (Special Condition #11).

The following conditions would support the defendant's rehabilitation and reintegration into the community and would help ensure that the defendant is engaged in lawful pursuits:

- Seek, and work conscientiously at, lawful employment or, if you are not gainfully employed, you shall pursue conscientiously a course of study or vocational training that will equip you for employment (Discretionary Condition #4);

- Refrain from knowingly meeting or communicating with any person whom the defendant knows to be engaged, or planning to be engaged, in criminal activity (Discretionary Condition #6);

- Refrain from excessive use of alcohol, and from use of a narcotics drug (Discretionary Condition #7);

- Refrain from possessing a firearm, destructive device, or other dangerous weapon (Discretionary Condition #8);

- Participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider (Discretionary Condition #9);

## IV. CONCLUSION

For the foregoing reasons, the government requests that the Court sentence Valerie Gaytan to 60 months' imprisonment.

                                    Respectfully submitted,

                                    MORRIS PASQUAL
                                  Acting United States Attorney

By:    /s/ *Erika L. Csicsila*
        ANDREW C. ERSKINE
        ERIKA L. CSICSILA
        Assistant U.S. Attorney
        219 South Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 353-1875

        Dated: September 14, 2023